UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

In re

                                                                            Chapter 11

**ATREASURE CHEST, LLC, d/b/a**           Case No. 15-20814 (AMN)
**BounceU of Rocky Hill,**

              **Debtor.**

___

### UNITED STATES TRUSTEE'S OBJECTION TO THE ADEQUACY OF THE DEBTOR'S DISCLOSURE STATEMENT

       William K. Harrington, United States Trustee for Region 2 ("United States Trustee"), respectfully objects to the adequacy of the Debtor's proposed Disclosure Statement. In support of his objection, the United States Trustee, through his undersigned counsel, states the following:

       1.       A Treasure Chest, LLC ("Debtor") filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code on May 8, 2015. *See* ECF doc. # 1. No Official Committee of Unsecured Creditors has been appointed in the Debtor's case. The Debtor is represented by Attorney Marjorie R. Gruszkiewicz. *Id.*

### Debtor's Bankruptcy Schedules

       2.       The Debtor states that it has no ownership interest in any real property. *See* ECF Doc. # 9, Schedule A.

       3.       The Debtor lists ownership of personal property assets and collectively values those assets at 11,535.00 which includes its inflatable "bounce-houses" picnic tables, benches and office equipment ($5,250.00) as well as a lease deposit held by its landlord ($6,085.00). *See* ECF Doc. # 9, Schedule B.

       5.       The Debtor lists eleven secured claims held by various creditors which total $305,371.00. Of those listed eleven creditors, five did not lend money to the Debtor but to a

related corporation (Simonelli Enterprises, Inc. d/b/a BounceU of Warwick) but where the Debtor provided guaranties presumably without consideration being paid to the Debtor. The secured claims of the five guaranty–creditors cannot be accurately determined from Debtor's bankruptcy schedules as Debtor lists 4 of the 5 as having claims of $1.00 each. *See* ECF Doc. # 9, Schedule D.

      6.      The Debtor lists collective unsecured priority claims totaling $ 16,802.00 Owing to the United States Internal Revenue Service and the Connecticut Department of Revenue Services. *See* ECF Doc. # 9, Schedule E.

      7.      The Debtor lists four general unsecured claims totaling $ 27,449.00. Debtor does not list undersecured creditors listed on her Schedule D as general unsecured creditors on her Schedule F. *See* ECF Doc. # 9, Schedule F. Were Debtor to have included her Schedule D undersecured creditors' claims on her Schedule F, Schedule F claims would approximate $327,570.00. [$ 305,371 - $5,250 = 300,121 + $ 27,449 = $ 327,570]. *See* ECF Doc. # 9, Schedules D and F.

### Debtor's Bankruptcy Reporting Requirements

      8.      A review of the Debtor's case docket reveals that the Debtor has failed to file its May 2015 Monthly Operating Report and is, thus, not current with its duty to file MORs for each calendar month in which it remains in Chapter 11.

### Compliance with Chapter 11 Quarterly Fee Payments

      9.      After a review of the Debtor's Chapter 11 Quarterly Fees payment history, it appears that the Debtor is current with the payment of its Chapter 11 Quarterly Fee assessments through the third calendar quarter of 2015; however, as Debtor failed to file her MOR for May 2015, it is possible that the Chapter 11 Quarterly Fee assessment for the second calendar quarter of 2015 may be inaccurate as such assessments are based on the Debtor's self-reporting of disbursements on its MORs. *See* ECF Docket.

**Debtor's Disclosure Statement**

10. In its Disclosure Statement, on page 4 in the last paragraph, the Debtor provides that "THE PLAN PROVIDES FOR A DISTRIBUTION TO ALL ALLOWED GENERAL UNSECURED CLAIMS WITHIN THIRTY (30) DAYS FROM THE EFFECTIVE DATE, WHICH IS SUBSTANTIALLY MORE THAN SUCH CREDITORS WOULD RECEIVE UPON A LIQUIDATION." Debtor's "Plan" calls for a 10 year pay out to unsecured creditors at a rate of approximately $ 3,723.50 per year which for smaller general unsecured creditors could means only pennies per year. The quoted passage above makes it seem like general unsecured creditors will receive their full dividend within 30 days of the effective date of the plan. Such language should be omitted as it is misleading.

11. On page 6 of its Disclosure Statement, under "VOTES NECESSARY TO CONFIRM THE PLAN," Debtor starts the first paragraph with the phrase "[I]f impaired classes exist . . .". Debtor should know by know whether or not the plan contains impaired classes since Debtor's Plan proposes only two classes and admits that the class one (secured) claim is impaired on page 5 of its Plan and Debtor proposes to pay its class two (general unsecured) creditors only 25 percent of their respective claims over a 10 year period. *See* ECF Doc. 62-1, page 6.

12. Debtor admits that Brenda Simonelli, in order to establish her other company, Simonelli Enterprises, Inc. and begin its business in Warwick, RI, took income of the Debtor which resulted in Debtor being unable to pay its expenses as they became due, to wit: "[T]he Debtor's financial difficulties primarily arose when the Debtor's principal, Brenda Simonelli opened a BounceU location in Warwick, Rhode Island. A number of problems delayed the opening of the Warwick location which caused a financial drain on the Debtor." *See* ECF Doc. # 62, page 7, third full paragraph.

13. The actions of Debtor's principal Brenda Simonelli in converting the assets of

the Debtor to the benefit of herself and her other company Simonelli Enterprises, Inc. should have created a cause of action accruing to the Debtor and against both Brenda Simonelli and Simonelli Enterprises, Inc.; however, no mention has been made of the existence of these causes of action in Debtor's schedules or in its Disclosure Statement.  While Brenda Simonelli's own bankruptcy may eventually discharge her of this claim by the Debtor, it still must be accounted for on Debtor's schedules and in its Disclosure Statement.  In the case of Simonelli Enterprises, Inc., there is no bankruptcy filing which might temporarily protect it from a claim by the Debtor, and Debtor's Disclosure Statement reports that Simonelli Enterprises, Inc. is meeting its current obligations and no longer needs "contributions" from the Debtor.  *See* ECF Doc. # 62, page 7.

14. Debtor's Plan of Reorganization must be a consensual, with both classes voting in favor of confirming its Plan of Reorganization in order for Debtor to confirm its Plan and overcoming the "absolute priority rule" which would otherwise prevent Debtor's principal Brenda Simonelli from retaining her ownership interest in the Debtor.  Debtor's Disclosure Statement is silent concerning the possibility of the "absolute priority rule" affecting its Plan and how Debtor would react if it comes into "play" such as whether the Debtor will seek a determination from the Bankruptcy Court if the "new value" exception to the "absolute priority rule" might be applicable (if it exists at all).   Such detail might assist creditors and parties in interest in determining whether or not to object to the Debtor's Plan of Reorganization and whether to vote to accept or reject it, as well.

15. The Debtor does not provide any projection of income which might be expected from the Debtor over any period of the anticipated 10 year duration of its Plan payments.  It is the duty and burden of the Debtor to establish the feasibility of its Plan of Reorganization even at the Disclosure Statement consideration stage of its reorganization effort.   "Section 1129(a)(11) of the Bankruptcy Code requires that the Court determine that: "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the

4

debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11. U.S.C. § 1129(a)(11).

16. This requirement is typically referred to in the bankruptcy community as the 'feasibility' requirement." *In re 's DBSD North America, Inc.*, 419 B.R. 179, 201 (Bankr. S.D.N.Y. 2009). "A Bankruptcy Court, in determining the feasibility of a proposed plan of reorganization should 'scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable.'" *Matter of Johns-Manville Corp.*, 68 B.R. 618, 635 (Bankr. S.D.N.Y. 1986), quoting *In re Monnier Brothers*, 755 F.2d 1336, 1341 (8th Cir. 1985).

17. "To demonstrate that a plan is feasible, it isn't necessary that success be guaranteed. All it needs to know is that the plan has a reasonable likelihood of success. The feasibility inquiry is peculiarly fact intensive and requires a case by case analysis." *In re DBSD North America, Inc.*, 419 B.R. at 201 - 202. "The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promises creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *In re Pikes Peak Water Company*, 779 F.2d 1456, 1460 (10th Cir. 1985), quoting *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1984).

18. "To establish feasibility, the debtor must present proof through reasonable projections, which are not speculative, conjectural or unrealistic, that there will be sufficient cash flow to fund the plan and maintain operations." *In re Leslie Fay Companies, Inc.*, 207 B.R. 764, 789 (Bankr.S.D.N.Y. 1997), *quoting Pan Am. Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 508 (S.D.N.Y. 1994).

19. Feasibility must be established by the Debtor in order to obtain confirmation of her plan of reorganization, and Debtor has failed to do so here.

WHEREFORE, the United States Trustee respectfully requests that the Court find that the Debtor's Disclosure Statement does not provide adequate information to its creditors and deny its approval, and grant such further relief as is just and appropriate.

Dated: December 8, 2015  
    New Haven, CT

Respectfully submitted,  
WILLIAM K. HARRINGTON  
United States Trustee for Region 2

By:    /s/   Steven E. Mackey  
Steven E. Mackey/ct09932  
Trial Attorney/OUST  
Giaimo Federal Building, Room 302  
150 Court Street  
New Haven, CT 06510  
(203) 773-2210